IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ARETHA COOPER-HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 5:18-CV-23 (MTT) |
| | ) |
| HANCOCK COUNTY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Defendant Hancock County[1] has moved to dismiss two of Plaintiff Aretha Cooper-Hill's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). [2] Doc. 24. For the following reasons, that motion (Doc. 24) is **GRANTED**.

### I. FACTUAL ALLEGATIONS[3]

Cooper-Hill, an African American with cancer who is at least forty years old, started working for Hancock County in 1977 as the Clerk of the Board of Registrars.

---

[1] The Hancock County Board of Elections was dismissed by consent of the parties on December 5, 2018. Doc. 32. Hancock County incorporated by reference the relevant sections of the Hancock County Board of Elections and Registration's motion to partially dismiss, and Cooper-Hill incorporated by reference the relevant sections of her response to the BOER's motion to dismiss in her response to Hancock County's motion to dismiss. Docs. 24 at 3, 5-6; 28 at 4-5. The Court will thus refer and cite to the BOER's brief and Cooper-Hill's response to it throughout this Order.

[2] In the same motion, Hancock County also moved to dismiss all claims against it because it was not properly served with process and process was insufficient. *Id.* at 4. Hancock County filed its motion on August 21, 2018. *Id.* at 6. Cooper-Hill had filed her amended complaint on July 17, 2018, and Hancock County was properly served on September 6, 2018—less than ninety days after the amended complaint was filed. Docs. 21; 29. A plaintiff has ninety days from the date the complaint is filed to serve the defendant. Fed. R. Civ. P. 4(m). Accordingly, Hancock County's motion to dismiss for improper service (Doc. 24) is **DENIED**.

[3] At the motion to dismiss stage, all allegations by the plaintiff are accepted as true and viewed in the light most favorable to the plaintiff. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (citation omitted).

Doc. 21 ¶ 16. She was later promoted to Deputy Registrar. *Id.* After the creation of the Hancock County Board of Elections and Registration ("BOER") in August 2011,[4] Hancock County appointed her to the position of Elections Supervisor. *Id.* Cooper-Hill was one of three people in Hancock County who received an election certification for county and city elections from the Georgia Secretary of State, and county elections could not be held without someone at the BOER with this certification. *Id.* ¶ 27.

Before the new BOER was formed in 2011, Nancy Stephens,[5] a Caucasian woman, "started exhibiting prejudice and discriminatory behavior [toward Cooper-Hill.]" *Id.* ¶ 17. After the BOER was formed and while Cooper-Hill was still the Deputy Registrar, she was diagnosed with cancer. *Id.* ¶ 28. Hancock County attempted "to keep [Cooper-Hill] from applying for the position of Elections Supervisor while she was on medical leave for cancer. [Hancock County] did not inform her that she needed to apply for the position of Election[s] Supervisor, and would have preferred to give the position to a Caucasian." *Id.* Instead, Cooper-Hill had an African-American BOER employee bring her an application that she later completed and submitted. *Id.* Cooper-Hill ultimately became the Elections Supervisor. *Id.* ¶ 16.

Stephens then became a BOER Board member and "continued to threaten, bully, harass, and intimidate [Cooper-Hill] at the office on a weekly basis. [Stephens] started a pattern of coming into the office on a regular basis interrupting the daily operations of the office and making demands that were contrary to the Georgia Election Code and in

---

[4] The Hancock County Board of Elections and Registration was created by statute to replace the Hancock County Board of Elections. Ga. S.B. 173, Reg. Sess. (2011). All individuals hired by the Hancock County Board of Elections and Registration are employees of Hancock County. Ga. S.B. 173 § 11, Reg. Sess. (2011).

[5] Stephens was terminated as a defendant in this case on July 12, 2018. Docs. 20; 20-1, 33.

violation of her office as a board member." *Id.* There are no allegations that Stephens used any language relating to Cooper-Hill's race, age, or disability during such "harassment" of Cooper-Hill. *See generally* Doc. 21.

Cooper-Hill alleges that "Stephens always interfered" with her duties as the Elections Supervisor. *Id.* ¶ 25. Stephens interfered by taking "Supervisor cards for the Logic and Testing of the DRE machines while [Cooper-Hill] was doing the inventory and hide the cards. When [Cooper-Hill] was ready to perform the testing, she would not be able to perform her job duties in a timely manner due to the cards being missing." *Id.* Stephens then filed "*a* complaint" with the Secretary of State regarding the untimeliness of the testing. *Id.* Cooper-Hill alleges that such conduct was an act of racial discrimination, a violation of the Georgia Election Code, and Stephens' "way to get [Cooper-Hill] terminated." *Id.* Cooper-Hill further alleges that Stephens "always made complaints to the Georgia Secretary of State that were fraudulent and unsubstantiated." *Id.* ¶ 26. Although Cooper-Hill "was never charged and always cleared[,]" Stephens "made it her business to harass and discriminate against [Cooper-Hill] on a regular basis, because [Cooper-Hill] would not purge any votes." *Id.*

Cooper-Hill complained of Stephens' conduct to the other BOER Board members. *Id.* ¶ 24. Stephens and another BOER Board member, Kathy Ransom,[6] who is also a Caucasian, "began to retaliate against [Cooper-Hill] for complaining to the BOER members for several acts of racial discrimination and harassment that she had been subjected to since her employment." *Id.* It is not clear when Rhodes submitted her complaints to the BOER Board. *See generally* Doc. 21.

---

[6] Ransom was terminated as a defendant in this case on July 12, 2018. Docs. 20; 20-1, 33.

-3-

In April 2015, Cooper-Hill received a job evaluation. *Id.* ¶ 18. The three Caucasian members of the BOER Board indicated on their evaluations of Cooper-Hill that she "was not performing well[,]" even though they "did not have any information regarding [Cooper-Hill's] thirty-seven year tenure, nor her work ethics." *Id.* ¶ 19. Cooper-Hill alleges that the evaluations "were completed and used in an attempt to terminate [her] . . . in an elaborate scheme for the BOER's Caucasian majority members to purge and remove from the voter registration list, African American Citizens of Hancock County, in violation of their right to vote." *Id.* ¶ 21. Cooper-Hill was then terminated, despite her long, discipline-free tenure. *Id.* ¶¶ 20, 23. Cooper-Hill alleges that the evaluations were "racially motivated to get [her] terminated from her position of Elections [S]upervisor in order for the Caucasian board members [to] purge votes, because [Cooper-Hill] refused to do those illegal acts." *Id.* ¶ 22.

Cooper-Hill claims that her termination was the result of discrimination based on her race and retaliation based on her complaints to the BOER Board members that Stephens discriminated against her. *Id.* ¶¶ 33, 51. She alleges that the BOER's Caucasian majority wanted to acquire control over election records to purge African-American voters. *Id.* ¶ 21. Cooper-Hill also claims that her termination was the result of discrimination based on her age and disability. *Id.* ¶ 39, 45. She alleges that Hancock County terminated her "[due] to her physical health," Hancock County "did not make any accommodations for her to maintain some type of insurance through [the termination] process[,]" and Hancock County "no longer wanted that burden to have to maintain coverage for [her illness]." *Id.* ¶ 29. She further alleges that Hancock County "knew that [she] was over the age of 60 and was getting close to retirement" but "didn't want

[her] to retire," and terminated her instead. *Id.* ¶ 30. "All of these retaliatory reactions from [Hancock County] were orchestrated to terminate [Cooper-Hill] due to her race, because [she] would not carry out the illegal actions [Hancock County] wanted her to do." *Id.* Nowhere in her amended complaint does Cooper-Hill allege that someone outside of her protected classes filled her position after her termination. *See generally* Doc. 21.

Rhodes alleges Hancock County, through the BOER, racially discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*; discriminated against her based on her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and discriminated against her based on her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*, *Id.* ¶¶ 32-49. She also alleges Hancock County, through the BOER, retaliated against her for engaging in activity protected by Title VII and Title I of the Civil Rights Act of 1964. *Id.* ¶¶ 50-53. Finally, she claims she was subjected to a hostile work environment in violation of Title VII, the ADA, and the ADEA. *Id.* ¶¶ 54-55. Hancock County now moves to partially dismiss Rhodes' complaint, specifically her retaliation and hostile work environment claims. Docs. 22, 24.

## II. MOTION TO DISMISS STANDARD

The Federal Rules of Civil Procedure require a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. DISCUSSION

**A. Cooper-Hill's Retaliation Claim**

Cooper-Hill claims that her termination was a result of her complaints regarding racial discrimination in elections to the BOER Board members. Doc. 21 ¶ 17. Title VII prohibits retaliation against an employee because she "has opposed any practice made an unlawful employment practice by [Title VII.]" 42 U.S.C. § 2000e-3(a). To plead a Title VII retaliation claim, a plaintiff must allege sufficient facts to plausibly suggest that (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and

the adverse action. *McWhorter v. Nucor Steel Birmingham Inc.*, 304 F. Supp. 3d 1185, 1193 (N.D. Ala. 2018) (citing *Scott v. Sarasota Doctors Hosp. Inc.*, 668 F. App'x 878, 883 (11th Cir. 2017) (citation omitted)). Hancock County argues that Cooper-Hill did not properly allege the first and third elements of her retaliation claim. Doc. 22 at 7-12.

Cooper-Hill's complaint states (1) that she "informed the other Board members of Nancy Stephens' actions;" and (2) that "Kathy Ransom and Nancy Stephens . . . began to retaliate against [Cooper-Hill] for complaining to the BOER members for several acts of racial discrimination and harassment that she had been subjected to since her employment." Doc. 21 ¶¶ 17, 24. Hancock County argues in its motion to dismiss that Cooper-Hill's first allegation that she participated in statutorily protected activity "lack[s] sufficient factual material." Doc. 22 at 9. Cooper-Hill responded to Hancock County's motion by clarifying that her complaints to the BOER Board were in regards to the racial discrimination in Stephens' election practices, not her employment practices. Doc. 23 at 7-9. In its reply to Cooper-Hill's clarification, Hancock County argued that Cooper-Hill's complaints to the BOER Board were not protected by Title VII. Doc. 26 at 6.

The Court agrees with Hancock County. Informally voicing complaints to superiors regarding conduct prohibited by Title VII is considered statutorily protected activity. *Zarza v. Tallahassee Hous. Auth.*, 686 F. App'x 747, 753 (11th Cir. 2017) (citation omitted). However, the complaint must be in regard to an employment practice protected by Title VII. *Id.* "[A]n unlawful *employment* practice is established when the complaining party demonstrates that race . . . was a motivating factor for any *employment* practice. . . ." 42 U.S.C. § 2000e-2(m) (emphasis added). Employment practices include "fail[ing] or refus[ing] to hire or to discharge any individual . . . because

of such individual's race" and "limit[ing], segregat[ing], or classify[ing] his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities[.]" 42 U.S.C. § 2000e-2(a).

Paragraph 24 of Cooper-Hill's amended complaint possibly alleges an unlawful employment practice:

> BOER members Kathy Ransom and Nancy Stephens who are Caucasians, discriminated against [Cooper-Hill] in that they began to retaliate against [Cooper-Hill] for complaining to BOER members for several acts of racial discrimination and harassment that she had been subjected to since her employment.

Doc. 21 ¶ 24. When read liberally and in the context of the surrounding paragraphs, the Court initially interpreted the "racial discrimination" and "harassment" complained of as Hancock County's allegedly unlawful employment practices, not the alleged unlawful election practices. *Id.* ¶¶ 17, 26 ("BOER board member Nancy Stephens had started exhibiting prejudice and discriminatory behavior prior to the creation of the BOER and her appointment as a member. . . . Stephens made it her business to harass and discriminate against [Cooper-Hill] on a regular basis. . . ."). However, Cooper-Hill clarified in her response to the BOER's motion to dismiss that her complaints to the BOER Board members were in reference to the allegedly unlawful election practices, not employment practices, and that complaining of unlawful election practices is statutorily protected conduct under Title VII.[7] Doc. 23 at 7-9.

Cooper-Hill further argues in her response that to establish a prima facie retaliation case under Title VII, the plaintiff need only show that she "'had a good faith,

---

[7] The Court "may use [Cooper-Hill's] brief to clarify allegations in her complaint whose meaning is unclear." *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000) (citations omitted).

reasonable belief that the employer was engaged in unlawful employment practices.'" *Id.* at 7 (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (holding that a plaintiff must have both a subjective and objectively reasonable belief that her employer was engaged in unlawful employment practices)) (alterations in original). She argues that she "had a good faith reason to believe that her employer was engaging in unlawful employment practices against her race. . . . [Cooper-Hill] informed the Board, as well as BOER member Nancy Stephens individually, that she could not discriminate against voters to increase the Caucasian votes for the 2015 elections. . . ." *Id.* at 8.

Cooper-Hill, again, clearly states that she was complaining of unlawful *election* practices, which is not protected by Title VII, and she thus did not have an objectively reasonable belief that she was complaining of an unlawful employment practice. *Little*, 103 F.3d at 960. Alleged discriminatory actions toward non-employee third parties is not an employment practice made unlawful by Title VII. *Edwards v. Ambient Healthcare of Ga., Inc.*, 674 F. App'x 926, 930 (11th Cir. 2017) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 & n.16 (11th Cir. 1997) (noting that employees' retaliation claim based on opposition to unlawful discrimination against motel customers "could not proceed under the familiar Title VII retaliation statute" because the plaintiffs did not allege that they were discriminated against for "opposing an unlawful *employment* practice")). Because Cooper-Hill's complaint does not allege an unlawful employment practice, she has not sufficiently pled the first element of retaliation. Accordingly, Cooper-Hill's retaliation claim is **DISMISSED without prejudice**.

### B. Cooper-Hill's Hostile Work Environment Claim

Cooper-Hill claims that Hancock County, particularly Stephens, created a hostile work environment in violation of Title VII, the ADEA, and the ADA. Doc. 21 ¶ 55. To bring a hostile work environment claim, the plaintiff must allege: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her membership in the protected class; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under either vicarious or direct liability. *Jones v. UPS Ground Freight,* 683 F.3d 1283, 1292 (11th Cir. 2012).

Hancock County only argues that Cooper-Hill did not allege sufficient facts to plead the fourth element of her hostile work environment claim. Doc. 22 at 12-17. Hancock County makes its argument with a thorough analysis of the four-factor *Miller v. Kenworth of Dothan, Inc.* test. *Id.* (citing 277 F.3d 1269, 1276 (11th Cir. 2002)). However, that lengthy analysis is unnecessary, as Cooper-Hill has not alleged anything in her amended complaint to suggest that she was harassed due to her membership in a protected class, thereby failing to sufficiently plead the third element of a hostile work environment claim.[8] *See generally* Doc. 21. Rather, Cooper-Hill states that Stephens "harass[ed] and discriminat[ed] against [Cooper-Hill] on a regular basis, because

---

[8] In her response to the BOER's motion to dismiss, Cooper-Hill attempts to elaborate on her allegations in her twice-amended complaint by adding new facts. Doc. 23 at 16. Without citing to her amended complaint, she states that Stephens told Cooper-Hill that she "would not have her job for long" because "'you people are so dumb[,]' meaning African-Americans." *Id.* at 12. This lack of citation is unsurprising, as the amended complaint does not contain those allegations. *See generally* Doc. 21. "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly[,]" and the Court will not consider these new factual allegations. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999) (citation omitted).

[Cooper-Hill] would not purge any votes." *Id.* ¶ 26. Failure to commit an election violation does not make Cooper-Hill a member of a protected class under Title VII, the ADEA, or the ADA. *See* 42 U.S.C. §§ 2000e-2, 12101; 29 U.S.C. § 623. Accordingly, Cooper-Hill's hostile work environment claim is **DISMISSED without prejudice**.

## IV. CONCLUSION

Hancock County's motion to dismiss for improper service (Doc. 24) is **DENIED**. Hancock County's motion to partially dismiss Cooper-Hill's complaint (Doc. 24) is **GRANTED**. Accordingly, Cooper-Hill's retaliation and hostile work environment claims are **DISMISSED without prejudice**. Cooper-Hill's racial, age, and disability discrimination claims may proceed to discovery.

**SO ORDERED**, this 10th day of December, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT